13420

ANDERSON v. BALLENGER

(164 S. E., 313)

*Messrs. Mann & Plyler,* for appellant,

*Messrs. Hodges & Leatherwood,* for respondent,

June 1, 1932.

The opinion of the Court was delivered by Mr. Justice Carter.

This action, commenced in the Court of Common Pleas for Greenville County, August, 1930, by E. M. Anderson, as plaintiff, against C. P. Ballenger, doing business as Ballenger Paving Company, was instituted for the recovery of damages for personal injuries alleged to have been sustained by the said E. M. Anderson December 25, 1929, while in the employ of the defendant, and while being transported on one of the defendant's trucks, over the Greenville and Columbia highway, to the place of work near Columbia, S. C., when he, the said E. M. Anderson, was thrown from the said truck. The accident occurred, according to the allegations, on the Greenville and Columbia highway near the Town of Laurens, S. C. It is alleged in the complaint that the injuries thus received by E. M. Anderson were caused by the gross negligence of the defendant in failing to provide reasonably safe means of transportation, "in failing to keep the truck in good repair, and in the manner in which the said truck was being operated." In the answer filed by

the defendant, the defendant admitted that the plaintiff was in his employ and received some injuries as the result of the alleged accident, but denied the other material allegations of the complaint. The defendant also interposed the defense of contributory negligence, negligence of a fellow servant, and assumption of risk. Issues being joined, the case was tried before his Honor, Judge T. J. Mauldin, and a jury, at the June, 1931 term, of said Court. At the conclusion of the testimony, a motion for direction of a verdict was made by the defendant, which motion the trial Judge overruled and submitted the case to the jury. The jury returned a verdict for the plaintiff for the sum of $4,000.00. Motion for a new trial on behalf of the defendant being refused, from the judgment entered on the verdict the defendant appealed to this Court. Thereafter the plaintiff died, and, by order of the Court, the widow of the plaintiff was duly substituted as party plaintiff.

In their brief counsel for appellant name five issues, as raised by the exceptions, for the Court's consideration, and in considering the appeal we shall, in the main, follow the outline of issues suggested by the appellant's counsel.

## Issue I

"Was there error by the trial Court in refusing to withdraw case from jury or in refusing to grant new trial where plaintiff's attorney used insurance report in plain view of jury in cross examining defendant's witness, and the witness as a result inadvertently referred to liability insurance on the truck involved in the accident?"

During the progress of the trial, when William B. Poole, superintendent for the defendant on the work in question, a witness on behalf of the defendant, was being cross-examined by counsel for the plaintiff, it appears that counsel for plaintiff handed to the witness a paper and the following occurred at that time:

"Q. Well, Sir, Mr. Poole, you sign your name William Poole? A. Yes, sir.

"Q. I will ask you if you didn't make that out? A. Yes, sir.

"Q. Now, that is dated December 27th, 1929, and that is a report of accident, is it not? A. Yes, sir, it was made in my office under my—but whether I actually made it—

"Q. And over your signature? A. Yes, sir.

"By Mr. Mann: Your Honor, we object to that statement; in the first place it is not the original, no notice having been given to produce it, and second, it is irrelevant, and in the third place it is accumulative.

"The Court: I don't know what the statement purports to be.

"By Mr. Leatherwood: I will pass it up to your Honor. I merely want to question him in regard to the contents of it, I don't care about introducing it in evidence.

"The Court: Go ahead and question him on the contents and use that as the basis of the cross-examination.

"By Mr. Leatherwood:

"Q. As I understand, Mr. Poole, that is over your signature? A. It is not signed.

"Q. It is made up by you? A. Yes, sir.

"Q. Now, that appears to have been on December 27th, 1929, that is only four days after the accident, is it? A. Yes, sir.

"Q. And I will ask you if at that time when it was fresh on your memory if you didn't report that eight employees of Ballenger Paving Company returning to work on truck of Ballenger Paving Company, that the right front spring broke and leaves caught in radius and steering gear, causing driver to lose control, truck ran in dirt bank, rear end swinging round and threw several employees off of truck? A. Yes, sir."

On redirect examination of this witness by counsel for defendant, the following occurred:

"Q. That report blank, the one he is. referring to, is report you made to your——? A. Insurance Company.

"By Mr. Mann: May it please the Court, that was not responsive to the question, his employer, the report is to his employer, Mr. Ballenger, and under those circumstances, however much I regret to, I will have to make a motion that the Court either withdraw the case from the jury or order a mistrial.

"The Court: How is that, Mr. Mann?

"By Mr. Mann: Mr. Poole made reference there to some insurance company in his testimony that was not responsive to the question and under these circumstances I will have to ask——

"The Court: I haven't heard anything in reference to any insurance. I will instruct that jury they haven't got anything to do with whether there was any insurance or not, I will strike that much of it out, if there was any reference——

"By Mr. Mann: Well, there was, your Honor, and I am making a motion now, and if you want to refresh your memory. I am making the motion that the case be withdrawn or mistrial ordered.

"The Court: I will find out what got in here, if there was any testimony got in there it got in without any objection to it.

"By Mr. Leatherwood: From his own witness and in response to his own question.

"The Court: Let's see what the record reveals.

"By Mr. Mann: I asked if it was not a report made to his employer——

"The Court: That report is not in evidence.

"By Mr. Mann: That is true, but the witness inadvertently and not in response to my question made reference to insurance and——

"The Court: I can't withdraw the case from the jury if a mistake like that occurs. I can instruct the jury it is not a question that this Court has to do with in so far as any in-

surance obtained or didn't obtain, that is not a question for that jury or for this Court, if there was any such testimony as that cropped out here unawares disregard it, we haven't got anything to do with it.

"By Mr. Mann: In proceeding on with it further we wish to do so, we are not waiving our rights on that motion.

"The Court: All right, you can reserve all the rights you have, but I am not going to withdraw this case from the jury, because perhaps an error got in here, I will try to correct it and I have done and will do further, if you will show me how I can do any further.

"By Mr. Mann: The decisions, as I understand them, that under those circumstances it is the function of the trial Court to either order a mistrial or withdraw the case from the jury.

"The Court: If you put a witness on the stand and he involves something that is not relevant the Court is not responsible for it and neither is the plaintiff, but the Court does take this responsibility in saying that if any such testimony, any irrelevant or any improper testimony, if it cropped out here unawares, that jury is not to consider it. I don't think it is incumbent upon the Court to order a mistrial.

"By Mr. Mann: If your Honor wants to refresh yourself as to what he said I will be glad for the stenographer—

"The Court: I am perfectly satisfied, Mr. Mann.

"By Mr. Mann: Q. Mr. Poole, you report these accidents, do you not, to Mr. Ballenger, your employer? A Yes, sir.

"Q. You, of course, advised him of this accident as soon as you could? A. Yes, sir.

"Q. And I believe it was after the matter that Mr. Leatherwood asked you about and it was the blank he held in his hand that you referred to? A. Yes, sir.

"I will ask that Mr. Leatherwood preserve that blank, your Honor."

In the trial of cases of the nature of the case at bar it is, of course, improper for the plaintiff to offer evidence to the effect that the defendant was insured against damages in such cases, but under the facts of this case we fail to see in what way the trial Judge committed error. The questions asked the defendant's witness, Mr. Poole, above quoted, on cross-examination were, in our opinion, permissible for the purpose of testing the memory of the witness and also for that purpose to use as a basis the paper in question, and, according to our view of the testimony elicited by plaintiff's counsel, there was nothing in the same to indicate that the defendant had insurance covering the damages alleged. What was brought out by this witness of the defendant regarding insurance was during the re-direct examination by counsel for the defendant. The question asked this witness by defendant's counsel was "that report blank, the one he is referring to, is report you made to your—?" To which question the witness answered, "Insurance Company."

Appellant contends that the answer was not in response to the question asked. Even if it was not in response to the question propounded, under our view, the witness evidently thought the information given by him was the information sought by defendant's counsel. At any rate, the trial Judge did what he could to save the defendant from being prejudiced thereby. His Honor fully instructed the jury that insurance had nothing to do with the case; that such question was not before the jury, and it should, in no way, affect their verdict. His Honor, in our opinion, properly refused to take the case from the jury on defendant's motion.

On the motion for a new trial, the defendant's counsel submitted the following affidavit as having a bearing on this question:

"Personally appeared before me A. C. Mann, who after being duly sworn, says that he is a member of the firm of Mann & Plyler, attorneys for the defendant in the forego-

ing action; that this deponent personally handled the trial of said case before Hon. T. J. Mauldin, presiding Judge, and a jury in the Court of Common Pleas at Greenville, S. C.; that during the cross-examination of defendant's witness, Wm. B. Poole, plaintiff's attorney produced from his file and held in his hands while standing near (about six feet of) the jury box, and in plain view of the jurors, a printed form purporting to be a report of accident to employees, and began cross-examining said witness with reference to said report. With this document in his hands he walked along by the jury panel some two or three feet from the jury box and exhibited this to the witness and began cross-examining him concerning said report, this over the deponent's objection. Later, he exhibited same to the Judge then returned by the same route near the jury box to his position at the bar and continued examining the witness concerning said report and statements made therein, holding said blank in his hands which carried two perforations about one-fourth of an inch in diameter at the top and showed that it was a form report, with large printed lettering thereon.

"Further, on information and belief, this deponent says that said report blank was a copy of one filled out by the defendant for an insurance company which claims that it is not now, and was not at the trial, financially interested in the outcome of this case, and took no part at the trial in the defense of this case, the said copy thereof having reached plaintiff's attorneys through some channel unknown to this deponent, but admittedly said copy did not reach plaintiff's attorneys through the defendant.

"This deponent further says that without meaning the slightest reflection on plaintiff's attorneys, he verily believes that the obvious result was that the jury received the impression and idea that insurance was involved in the case, and the verdict no doubt was materially influenced thereby, to the hurt of the defendant.

"A. C. MANN.

"Sworn to before me this 26th day of June, 1931.

"CHARLOTTE STEVENSON [L. S.]
"Notary Public for S. C."

Of course, it was improper for plaintiff's counsel to exhibit to the jury a paper in the manner charged in the above affidavit. But such charge and what actually transpired in the Court during the trial of the case was before the trial Judge and within his view, and, since his Honor overruled the motion made on this ground without comment, so far as the record discloses, except to state that he had given due consideration to the grounds upon which the motion for a new trial was based, we must assume that the position taken by defendant's counsel in this respect was regarded by the trial Judge as being without merit, and such motion, under the well-recognized rule, being largely within the discretion of the trial Judge, this Court will not interfere with his Honor's ruling, in the absence of a showing that his Honor abused his discretion.

## Issue II

"Was there error in refusing motion for directed verdict where plaintiff was being gratuitously conveyed in defendant's truck, and where complaint charged only gross negligence, and further was charge giving plaintiff benefit of simple negligence, proper?"

As to the contention of appellant that the trial Judge erred in refusing to grant the motion for a directed verdict upon the ground that Anderson was being transported gratuitously, we deem it sufficient to state that, in our opinion, the record does not support the position that Anderson was being transported gratuitously. It is true, Anderson did not pay the defendant a transportation charge, and there was no agreement to do so, but this fact does not make the act of conveying him a gratuitous act, under the facts of this case. It is admitted that he (Anderson) was in the employ of the defendant, and at the time of his in-

jury was being transported by the defendant in one of defendant's trucks, and the only reasonable inference to be drawn from the evidence adduced at the trial is that Anderson was being transported from his home to the place where he had been working and was to continue to work for the defendant, at the time of the occurrence in question, and, further, that the driver of the said truck was at the time of the said injury to Anderson in the employ of defendant, and at the instance of the defendant was operating and driving the said truck. The nature of the business being conducted by the defendant at the time in question was such that it was advantageous to the defendant to transport employees from their homes to the different places where defendant's business was being conducted, in order to carry on his work successfully; the defendant being engaged in the paving of roads in different places in this State as well as other States. A contractor engaged in the kind of work which the defendant was conducting could not expect to find trained and experienced laborers suitable for successfully carrying on his work at the several locations, and to successfully conduct such work it was necessary for him to convey from place to place trained and experienced men such as Anderson, who had worked for the defendant for a period of three years immediately preceding the time of his injury. Considering the record as a whole, it is our opinion that under no reasonable inference to be drawn from the evidence adduced at the trial could it be said that Anderson was being conveyed by the defendant gratuitously at the time in question.

As to the error imputed to the trial Judge, in holding that the allegation of "gross negligence," charged in the complaint against the defendant, included simple negligence, we deem it sufficient to call attention to the opinion of this Court written by Mr. Justice Hydrick, as the organ of the Court, in the case of *Furman v. A. C. Tuxbury Land & Timber Co.*, 112 S. C., 71, 99 S. E., 111, 113, wherein the Court held that "the allegation of the greater

wrong includes the lesser." The Court adheres to the principle stated in the above-mentioned case, *Furman v. Tuxbury.* The trial Judge, in our opinion, committed no error in the respect here charged.

## Issue III

"Did the Court commit error in charging the jury that gross negligence might be so aggravated as to amount to wilfulness where the complaint charged only gross negligence?"

In his charge to the jury his Honor charged in regard to negligence and gross negligence as follows: "Negligence, gentlemen of the jury, is the failure to exercise due care; what is gross negligence, the thing which is charged here, it is the failure to exercise slight care, and, gentlemen of the jury, I say to you now that one may be negligent and if he is he is simply failing to give that care to what he is doing that he ought to do, measured by what a person of ordinary prudence and care would do; a man may be so indifferent as to his conduct as not to give slight care to what he is doing; if he does, he is guilty of that thing we call gross negligence, and gross negligence may be so aggravated in its character as to be denominated that thing we call willfulness; and willfulness as descriptive of conduct is simply the conscious failure to exercise due care."

In our opinion, his Honor gave the jury a correct explanation of the terms "negligence" and "gross negligence," and the error imputed to his Honor cannot be sustained.

## Issue IV

"Where an employer provides a truck gratuitously for transportation of employee, did the Court err in charging to the effect that employer was liable for any injuries resulting from defect, and in adding that a truck was such an appliance as placed on the employer the nondelegable duty to furnish reasonably safe appliances with which to work?"

As to the question here raised regarding a truck gratuitously furnished for transportation of an employee, that question is disposed of by what we stated under our consideration of the first issue, above named. As to the errors here alleged, we consider it sufficient to state that, after a careful examination of the entire record, it is our opinion that the alleged errors. imputed to the trial Judge cannot be sustained.

## Issue V

"Did the Court err in charging wrong statutory law as to speed of truck which had the effect of instructing the jury that the defendant was guilty of negligence *per se,* whereas a charge of the correct law would have shown that the defendant was at the time operating the truck at the lawful speed?"

Near the close of the charge of the trial Judge to the jury, his Honor read to the jury the following portion of the 1924 Act of the Legislature, approved March 26, 1924 (33 St. at Large, 1182, 1183, § 2), governing the speed of trucks on the highways:

"No person shall operate any vehicle on the public roads of this State at a rate of speed greater than is reasonable and proper at the time and place, having regard to the traffic and use of the highway, and its condition, or so as to endanger the life, limb, or property of any person, or in any event at a greater rate than is shown in the following tabulation.
\* \* \*

"b. Trucks, delivery wagons, and other freight carrying vehicles equipped on all wheels with pneumatic tires—not exceeding twenty miles per hour on rural roads, and fifteen miles an hour on sections of the road where signs have been placed as provided in Section 2 (a) of this Act.

"c. Truck, delivery wagons, and other freight carrying vehicles, equipped in whole or in part with solid tires—not exceeding fifteen miles per hour.

"d. Special regulations by municipal authorities, placing further limits on speeds in certain areas, must be conspicuously displayed on the highway where the limits apply in order to be effective."

The above-mentioned Act of 1924 was repealed by the Act of 1928 (Act March 10, 1928 [35 St. at Large, 1315]), fixing the speed of trucks at 30 miles per hour instead of 20 miles per hour as fixed by the Act of 1924. It is the contention of appellant that, in view of the allegation in the complaint to the effect that at the time of the injury the truck in question was being driven at a rapid and excessive rate of speed, charging the Act of 1924 was prejudicial to the defendant; it being contended by appellant that the speed of the truck at the time of the accident did not exceed the speed permitted by the Act of 1928, but that, under the testimony, the speed of the truck was in excess of the rate provided in the Act of 1924, which Act was repealed before the time of the accident and the 1928 Act was of force at the time of the accident. It appears that, at the time of the trial of the case, the trial Judge was not aware of the fact that the 1924 Act had been repealed by the 1928 Act, and neither of the attorneys representing the respective parties called attention to the change in the law. We therefore assume that the attorneys also knew nothing of the change. It is true, under the recognized rule, it is incumbent upon the trial Judge to charge the principles of the law applicable to the case without any special request being presented, and it is only when a fuller charge on any particular phase of the law is desired that it is incumbent upon counsel to call the matter to the attention of the trial Judge and to request a fuller charge. While it was error to read to the jury the 1924 Act referred to, in our opinion, the defendant was not prejudiced thereby, for the reason that under no view of the evidence could the conclusion be reached that the accident was caused by an excessive speed of the truck. Even Anderson himself frankly admitted that the truck was not speeding, and he in no way,

claimed or contended that his injury was caused by the speeding of the truck or by its being improperly driven. The evidence was, however, susceptible of the inference that the accident and resultant injury to Anderson was caused by the defendant failing to provide "reasonably safe means of transportation, in failing to keep, the truck in good repair"; there being proof to the effect that the springs to the truck had been broken and the superintendent in charge of the work in question had knowledge of this fact, and, notwithstanding this fact, the truck was not repaired but was continued in use without repair.

While we have not discussed herein all of the questions suggested by the appellant, we have duly considered the same, and, after careful consideration of the entire record in the case, it is our conclusion that the exceptions should be overruled. It is therefore the judgment of this Court that the judgment of the Circuit Court be, and the same is hereby, affirmed.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES STABLER and BONHAM concur.